## In re Anonymous Nos. 40 & 61 D.B. 89 and 6 D.B. 90

Disciplinary Board Docket Nos. 40 & 61 D.B. 89 and 6 D.B. 90.

*Special Master,* March 5, 1992—

### REPORT OF SPECIAL MASTER

### STATEMENT OF THE CASE

This matter is before the undersigned by virtue of his appointment as a special master. The purpose of the appointment was to conduct a hearing into a series of alleged violations of the Code of Professional Responsibility and Disciplinary Rules. The charges are contained in three separate petitions identified as petition for discipline, Nos. 40 D.B. 89, 61 D.B. 89 and 6 D.B. 90. The charges will be dealt with here in the order in which the evidence was presented at the hearing.

The first matter addressed was Charge II of petition for discipline, No. 6 D.B. 90. It involves the representation of [A], in a personal injury claim. The petition alleges that, after being notified to appear in the [   ] County Courthouse for trial, respondent told

the Honorable [B's] law clerk, [C], to tell Judge [B] that respondent would not be appearing in court and that Judge [B] could "shove it." [D.R. 1-102(A)(5); 1-102(A)(6); and 7-106(c)(6).]

The testimony developed at te hearing, surrounding this event, indicated that respondent was subject to a "one-hour call" to appear for trial, during the week beginning Monday, August 13, 1984. His case was number two on the list. According to respondent, he touched base with the judge's chamber the preceding Friday, communicated with counsel for the parties in the case before him, and was advised that the case was a "must try" and hence, he would not be called on Monday. Notwithstanding this belief, on Monday, he was called. In the interim, his mother was admitted to the hospital and was scheduled for surgery on Monday afternoon. Respondent testified that during his conversation with [C], he advised him both that he was surprised at being called and that he needed to be present with his mother at the time of her surgery, since he was the only family member available. The records of the hospital admission and surgery were admitted into evidence.

Despite his apparent acerbic response, he appeared as required, albeit, without the benefit of a necktie. His explanation for his attire was that he easily could have purchased a tie and proceeded to trial. He acknowledged making some untoward remark to [C], but disclaimed any specific recollection of using the precise language complained of.

Disciplinary counsel then presented evidence with respect to Charge I of petition for discipline, No. 61

D.B. 89. It involved the respondent's representation of [Mr.] and [Mrs.] [D], also in a personal injury claim, against [Mr.] and [Mrs.] [E]. The allegations were that after the [Ds] discharged the respondent, he continued his representation; refused to release the file to the [D's] new attorney; and attended a pre-trial conference, without notifying the court or counsel for the [Es], that he had been discharged. [D.R. 1-102(A)(4) and (5); 2-110(B)(4); 7-101(A)(3); 7-102(A)(3); 7-106(C)(7); and RPC 1.16(a)(3) and (d).] The petition also claimed that respondent repeatedly asserted that he was entitled to a fee from the [D] case. In addition, the respondent is accused of making oral and written threats to [D], [F] ([D's] new attorney), [G] (opposing counsel), [H] Insurance Co., and Judge [I]. The petition asserts that these threats prejudiced the administration of justice. [D.R. 1-102(A)(5) and (6); D.R. 7-102(A)(1) and (2); 7-106(C)(6); RPC 3.1 and 8.4(d).] Finally, it charged that respondent misrepresented to the court and others that [D] told him that [F] had not written to him, and that [F] convinced [D] to discharge respondent [D.R. 1-102(A)(4); 7-102(A)(5); RPC 3.3(a)(1); 4.1(a), and 8.4(c).]

Perhaps the only fact clearly demonstrated by the evidence adduced in this matter, is that substitute counsel, [F], did not enter his appearance until long after the challenged conduct. In particular, the record discloses that [F] entered his appearance on April 24, 1987. The relevant conduct began as early as January of 1987, at the time the [D] began to seek alternate counsel. On or about January 7, 1987, the [D] met with [F] who ultimately became their lawyer. While [F] indicated that he sent notice to the respondent, respondent

claimed to have not received it. Respondent also claimed that during the period between January and his appearance at the pre-trial conference in March, he had periodic contacts with [D], none of which resulted in [D] indicating that he had been discharged. Although [D] denied this at the hearing, my observations of him, coupled with his acknowledgement that he was working, when his complaint included a claim grounded on his total disability, seriously taint his credibility. Thus, even though [F] may have struck a private accord with [D], prior to the questioned March hearing, the record is unclear as to whether respondent knew of it and it is abundantly clear that the public record contained no indication of [F's] representation.

In addition to the above, respondent offered a twofold explanation for his retention of the file. First, his belief that [D] was working, a fact which he confirmed by accident, and which he suggests led to the deterioration of his relationship with [D]. In this regard, he testified to his unwillingness to pursue this "false" claim, and fear that another, uninformed lawyer, would. Secondly, he claimed that monies were due him.

Charge I of petition for discipline, 6 D.B. 90, involved respondent's agreement to represent [J] and [K], Esq., in a lawsuit initially filed by [K] against Dr. [L]. This petition alleges that respondent pursued a baseless and frivolous claim and that he used the litigation to harass and maliciously injure Dr. [L]. [D.R. 1-102(A)(5) and (6); 2-109(A)(1) and (2); 7-102(A)(1) and (2); RPC 3.1 and 8.4(d).] It also alleges that respondent misrepresented to Dr. [L's] counsel ([M]) his and [K's] belief that Dr. [L] was the "notorious" Dr. [L], who had often been used as a medical expert witness for

the defense in accident cases. According to the allegations, respondent did this in order to obtain a settlement of the case. [D.R. 1-102(A)(4) and (6).] The petition also charges that respondent intended to suborn perjury, from [K], concerning whether or not there had been physical contact between [J] and Dr. [L]. [RPC 3.3(a)(4); 3.4(b); 8.4(c) and (d).]

This conduct giving rise to this matter is an outgrowth of the apparent practice in [   ], wherein plaintiff's lawyers attend medical examinations, along with their client. The practice is designed to protect the client and to insure that any statements made are accurately recounted. The examination was aborted when [K] and Dr. [L] could not agree on the procedure to be employed. This led to a dispute between Dr. [L] and [K], culminating in a lawsuit. The action was initiated by [K] on his behalf and on behalf of his client, [J]. Whether one agrees or disagrees with the strength of plaintiff's claim, it withstood judicial review, in the form of the denial of defendant's preliminary objections. Thereafter, the trial judge, Judge [N], also assessed the claim dismissing [K's] claim, but allowing the claim of [J] to proceed to trial. Respondent's involvement in this matter occurred shortly before the initial hearing, when he was approached by [K] because of [K's] participation as a witness and a party. He agreed at that late date to undertake to represent them and did so up through the trial before Judge [N].

During the course of the trial, an additional issue arose in connection with respondent's questioning of [K], relative to Dr. [L's] behavior. In particular, the allegation is that respondent suborned [K] to perjure himself. This issue also was addressed by the judge

before whom the conduct occurred and he found no impropriety.

Charge II of petition for discipline, 61 D.B. 89, and Charge III of petition for discipline, 6 D.B. 90, involved respondent's participation in three separate cases, and his relationship with the Honorable [I]. In the case of [O] v. [P], respondent supposedly failed to supply a good faith answer to the defendant's interrogatories and to produce documents during discovery. As a result, Judge [I] imposed sanctions and entered an order requiring the plaintiff to pay counsel fees. The respondent was also accused of seeking the recusal of Judge [Q] and Judge [B] without sufficient basis for doing so. This petition also claimed that respondent filed a frivolous lawsuit against Judge [I]. [D.R. 1-102(A)(5); 7-102(A)(1) and (2).] The petition further alleged that respondent directed intimidating, insulting and vituperative remarks to various judges and others engaged in the legal process. [D.R. 1-102(A)(6); 7-102(A)(1); 7-106(c)(1); 7-106(C)(6).] Finally, it alleged that respondent consistently and repeatedly misrepresented and distorted facts in his dealings, with the court. [D.R. 1-102(A)(4), (5) and (6); 7-102(A)(5).]

Not unlike many of the other matters presented during this hearing, the facts leading to these charges are less than clear. In the case of [O] v. [P], which is a medical malpractice case, wherein respondent represented the plaintiff, counsel for defendant served interrogatories and a request for production upon respondent. Because respondent believed that the interrogatories and request were "boilerplate" requests, many of which were not relevant (a phenomenon not unfamiliar to plaintiff's lawyers) respondent filed a "boilerplate" objection and

did not produce any documents. A motion to compel answers was heard by Judge [I] who directed the filing of answers and also directed the plaintiff to pay counsel fees. Sometime prior to the entry of this order, the plaintiff had retained alternate counsel who, in some fashion or another, authorized respondent to continue his representation of plaintiff, and apparently never entered his appearance until long after these events. In a series of subsequent hearings, the court again reaffirmed its order that plaintiff should pay counsel fees. Ultimately, the directive that plaintiff pay the fees was somehow converted into a directive that respondent pay these fees. There is nothing in this record which would indicate how that conversion occurred. The respondent appealed these orders after filing an appropriate bond, in the Court of Common Pleas. The Superior Court held that respondent didn't have standing in this matter because he was not the person required to make the payments.

The events complained of in [*Respondent*] *v.* [*R*] have to do with respondent's seeking the recusal of Judge [Q]. Respondent's explanation of doing this was his belief that he was not being treated fairly. It would appear that the question is not whether respondent's assessment of his treatment is accurate or inaccurate, but rather the genuineness of his belief. In this regard, his behavior supports his assertion that he honestly felt that he was not being treated fairly and that the only remedy available to him was the initiation of this action. Actually this assessment may well be applicable to all three cases. Much like the two cases above, the [*J*] matter involved respondent's attempt to recuse Judge [I], because of his belief that his clients were not re-

ceiving fair treatment. This belief finally led respondent to initiate a lawsuit to accomplish this goal.

Petition for discipline, 40 D.B. 89, relates to the respondent's entering his appearance on behalf of [T] in an action against [U], initiating a second action against [U], and one against the city of [ ], and the Pennsylvania Department of Transportation. The charge alleges that respondent filed three separate complaints containing allegation of fact that were inconsistent with, and mutually exclusive of, each other. Also, it charges that the respondent assisted [T] in pursuing fraudulent claims against the city of [ ]. [D.R. 1-102(A)(4) and (5); D.R. 7-102(A)(5) and (7).]

The testimony relating to this claim involved an injury supposedly suffered by plaintiff as she was exiting a [U] operated bus. The injury occurred in the city of [ ] and there is also an allegation of impropriety on the part of the [ ] Bureau of Police in that the conduct of the traffic officer may have contributed to the accident. Additionally, there was some question as to whether or not plaintiff stepped into a hole of some sort, which may also have contributed to the injuries she suffered.

Petition for discipline, 61 D.B. 89, at Charge III, alleges a pattern of misconduct on the part of respondent. It claims that his behavior is prejudicial to the administration of justice and adversely reflects on respondent's fitness to practice law. [D.R. 1-102(A)(5); 1-102(A)(6).] The petition further asserts that respondent's communications to judges, in person and in letters, is disrespectful and degrading and insulting

remarks contained in his pleadings are prejudicial to the administration of justice.

In support of these assertions, Disciplinary Counsel submitted a series of cases in which respondent was involved. Each of the cases submitted is in some way critical of respondent's conduct. Few, however, suggest that respondent's conduct requires sanctions. Indeed, some actually resulted in vacating the lower court's order or reversing the lower court's order.

The hearing in the matter commenced on Monday, August 6, 1990, and concluded on Wednesday, August 15, 1990. At the hearing, petitioner was represented by [   ], Esq., assistant disciplinary counsel. Respondent appeared representing himself and testified on his own behalf. At issue is whether the facts support findings that violations of the aforementioned Disciplinary Rules have occurred.

## DISCUSSION

As noted, the evidence adduced during the hearing, as to Charge II of the petition for discipline, 6 D.B. 90, is in dispute. [C], Judge [B's] clerk, who spoke to respondent, clearly indicated that when respondent was told there would be no continuance, his response was to tell the judge to "shove it." While acknowledging that his comments were intemperate, respondent claimed to have no recollection of using this particular expression. In addition to the allegation centering on this remark, the petition claimed that respondent further acted disrespectful and appeared for trial inappropriately attired.

The applicable rules read as follows:

(1) D.R. 1-102(A)(5): A lawyer shall not engage in conduct that is prejudicial to the administration of justice;

(2) D.R. 1-102(A)(6): A lawyer shall not engage in any other conduct that adversely reflects on his fitness to practice law;

(3) D.R. 7-106(C)(6): In appearing in his professional capacity before a tribunal, a lawyer shall not engage in undignified or discourteous conduct which is degrading to a tribunal.

Perhaps the most telling insight into the conduct of petitioner is found in the action of Judge [B] himself. Having had the opportunity to hear the evidence and having afforded the respondent an opportunity to explain his position, Judge [B] decided to impose, merely a token penalty. While I am not bound by the actions of Judge [B], his first-hand evaluation of the matter, resulting in his election to impose only token punishment, bespeaks his assessment of the seriousness of the matter and the appropriate punishment. Furthermore, he did not refer this matter to the Disciplinary Board until quite sometime after it happened, August 13, 1984, until October 25, 1985.

This is not to say that the conduct of respondent should be condoned or applauded. However, under the circumstances, particularly those involving respondent's mothers' imminent surgery and his need to be present with her, his behavior does not rise to the level of a violation of the Disciplinary Rules. Moreover, notwithstanding his statement that he would not appear, he did appear at the appointed time. At the

instant hearing, he testified that his client was present and that, if required, he could have proceeded to trial. Under these circumstances, respondent's conduct was not prejudicial to the administration of justice nor unduly discourteous or degrading to the tribunal before whom he was appearing.

The next charge, petition for discipline No. 61 D.B. 89, alleges violations of Disciplinary Rules 1-102(A)(4) and (5), 2-110(B)(4), 7-101(A)(3), 7-102(A)(3), 7-106(C)(7) and RPC 1.16(a)(3) and (d). These allegations are grounded on respondent's supposed refusal to transfer a file and to withdraw his appearance when he was notified that he was discharged by his clients, the [Ds]. The Rules read as follows:

(1) D.R. 1-102(A)(4): A lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(2) D.R. 1-102(A)(5): A lawyer shall not engage in conduct that is prejudicial to the administration of justice;

(3) D.R. 2-110(B)(4): A lawyer representing a client before a tribunal, with its permission if required by its rules, shall withdraw from employment, and a lawyer representing a client in other matters shall withdraw from employment, if he is discharged by his client;

(4) D.R. 7-101(A)(3): A lawyer shall not intentionally prejudice or damage his client during the course of the professional relationship;

(5) D.R. 7-102(A)(3): In his representation of a client, a lawyer shall not conceal or knowingly fail to disclose that which is required by law to reveal;

(6)   D.R. 7-106(C)(7):   In appearing in his professional capacity before a tribunal, a lawyer shall not intentionally or habitually violate any established rule of procedure or evidence;

(7)   RPC 1.16(a)(3):   A lawyer shall not represent a client, or where representation has commenced, shall withdraw from the representation of a client if the lawyer is discharged;

(8)   RPC 1.16(d):   Upon termination of representation, a lawyer shall take steps to the extent reasonably predictable to protect a client's interest, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advanced payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.

Examining the evidence as a whole, I find that there was not adequate proof to support the conclusion that respondent violated any of the aforementioned Rules. There is some question as to whether respondent had actually received notice that he had been discharged, when he attended the pre-trial conference, on March 24, 1987. At that time, new counsel had not entered an appearance, on behalf of the [Ds]. In this context, one could argue that not only did he not violate any Rules, it was his obligation to attend the hearing.

While respondent did not hesitate to express his true feelings concerning his client and successor-counsel, such an expression does not amount to a violation of the Rules. The record supports the conclusion that his reluctance to turn over the file, in the first instance,

was born of appropriate objectives. In particular, he testified that, at least in part, his hesitancy was a function of his knowledge that a portion of the claim may not have been meritorious and that this information had been withheld from him and likely would be withheld from successor-counsel. In short, the record does not support the conclusion that respondent received appropriate notice to release the file and may have actually received contrary instructions from [D]. In this light, his refusal to do so and his participation in a settlement conference, are not violative of the Code.

The additional allegations contained in this charge also do constitute a violation of the Code. They involve respondent's claim for a portion of the proceeds of the settlement and stem from an apparent misunderstanding between respondent and Judge [I]. It appears that at the hearing, this matter was clarified, in that Judge [I] stated that he did not intend that respondent should not receive any fee, but rather intended that someone other than he (Judge [I]) should decide the amount of the fee. While respondent's zeal in pursuing this claim might be characterized as excessive, it cannot be characterized as unethical.

Petition for discipline, 61 D.B. 89, also charges respondent with violating several additional Disciplinary Rules. They are grounded on the allegation that respondent made oral threats to [D], [F], [G], the [H] Insurance Co., and Judge [I]. There is no doubt that respondent expressed his intent to initiate legal action. His explanation of his intent, however, was that it was designed to protect his rights and his entitlement to certain monies. Whether one agrees with his analysis or not, to suggest that he should not file an action

to redress a claim, which he genuinely believes to be bona fide, is inappropriate, and not violative of the Rules.

The next matter presented at the hearing involved petition for discipline, 6 D.B. 90. It charges the respondent with pursuing a baseless and frivolous lawsuit and using the litigation to harass and maliciously injure Dr. [L] in violation of:

(1) D.R. 1-102(A)(5);

(2) D.R. 1-102(A)(6);

(3) D.R. 2-109(A)(1): A lawyer shall not accept employment on behalf of a person if he knows or it is obvious that such person wishes to bring a legal action, conduct a defense, or assert a position in litigation, or otherwise have steps taken for him, merely for the purpose of harassing or maliciously injuring any person.

(4) D.R. 2-109(A)(2): A lawyer shall not accept employment on behalf of a person if he knows or it is obvious that such person wishes to present a claim or defense in litigation that is not warranted under existing law, unless it can be supported by good faith argument for an extension, modification or reversal of existing law.

(5) D.R. 7-102(A)(1);

(6) D.R. 7-102(A)(2);

(7) RPC 3.1; and

(8) RPC 8.4(d).

The record discloses that respondent's participation in this case was an "11th hour" favor for a colleague. In that regard, it is important to note that respondent did not initiate the litigation. It is also important to

note that, at least in part, the lawsuit withstood defendant's preliminary objections and later, an analysis by Judge [N], who allowed the matter to proceed to trial. Thus, it would appear that at least a prima facie showing of a viable cause of action was apparent to the court. In light of this antecedent judicial scrutiny, evidencing the concurrence of two judges that a claim existed, and the respondent's uncontradicted assertion that his actions were done in good faith, no violation is apparent.

This complaint also charges that respondent, in an attempt to obtain a settlement, violated D.R. 1-102(A)(4) and D.R. 1-102(A)(6). This claim centers on an alleged misrepresentation to opposing counsel as to who the defendant in the case actually was. Given the nature of respondent's practice, and his extensive experience in personal injury work, it is hard to imagine that he could mistake a "notorious" defense physician for someone who wasn't. When this is viewed along with respondent's testimony, as to his knowledge of who the defendant actually was, there appears to be no inappropriate conduct.

This charge also alleges that respondent acted inappropriately in his examination of [K], at trial. During the trial, a question was posed to [K] about whether there had been any physical contact between Dr. [L], the defendant, and the plaintiff. [K] responded that he did not remember Dr. [L] touching the plaintiff. Thereafter, on redirect, it is alleged that respondent inappropriately questioned [K] about this matter. I turn again for guidance to the assessment afforded respondent's conduct, by the trial judge, who had the opportunity to observe this event. In connection with

this hearing, Judge [N] who presided over the trial, was deposed. His testimony clearly indicates that he perceived no improprieties during the course of the trial. In light of his assessment, it is hard to reach any conclusion to the contrary.

Perhaps the most troublesome allegations filed against respondent concern his relationship with Judge [I]. To characterize their relationship as oil and water would be an understatement. There can be very little doubt that their views are light years apart. However, merely because a lawyer disagrees with a judge, and pursues what he perceives to be appropriate action, does not necessarily mean he has violated the Code. In the case of [O] v. [P], because Judge [I] felt that appropriate responses to defendant's interrogatories were not forthcoming, he imposed sanctions and directed that the "plaintiff" pay counsel fees. Sometime thereafter respondent was replaced by substitute counsel, who did not file an appearance until approximately two years later, and whose testimony at the hearing demonstrated a remarkable lack of familiarity with both court procedures and the facts of his case. Despite his replacement, a series of additional sanctions were imposed and converted to respondent's responsibility, rather than plaintiffs. To hold the respondent ethically responsible for these compounded sanctions, in light of successor-counsel's behavior, is simply unfair.

In the case of [Respondent] v. [R], the petition for discipline alleged that respondent filed frivolous petitions demanding the permanent recusal of Judge [Q], in connection with motions filed by respondent on behalf of his clients. Likewise, the alleged violations involving [V] v. [S] also concern a supposed frivolous petition

for the recusal of Judge [I]. These petitions charged respondent with violations of:

(1) D.R. 1-102(A)(5);

(2) D.R. 7-102(A)(1);

(3) D.R. 7-102(A)(2).

Once again, the test is not whether one agrees with respondent's analysis, but whether the analysis passes prima facie scrutiny and was done in good faith. Respondent testified that he believed that he was not being treated fairly. His explanation of "motions practice" in [ ] is plausible and indeed, probably every plaintiff's lawyer has been served with "boilerplate interrogatories" bearing no relationship whatsoever to the particular case in litigation. Some might passively file responses. The nature of respondent's personality is not passive; his reaction is to fight fire with fire. While some might find this offensive, it is not unethical. A further examination of the evidence surrounding the filing of these petitions fails to support the conclusion that they are born of frivolity or malicious revenge. To reiterate, while respondent's zeal might not universally accepted, it does not form the underpinnings for violations of the Code.

The next matter presented at the hearing involved the charges in petition for discipline, 40 D.B. 89. This charge alleged that respondent filed inconsistent pleadings in the case involving [T]. The alleged violations are of:

(1)  D.R. 1-102(A)(4);

(2)  D.R. 1-102(A)(5);

(3)  D.R. 7-102(A)(5);

(4) D.R. 7-102(A)(7): In his representation of a client, a lawyer shall not counsel or assist his client in conduct that the lawyer knows to be illegal or fraudulent.

In the first instance, it is not clear that the pleadings are, necessarily inconsistent. Even if they are, the inconsistencies are attributable to normal, human error. The claims were not fraudulent nor did respondent make a knowing false statement of law. On the contrary, it would appear that the pleadings were prepared by subordinates of respondent who did not communicate with one another and/or with respondent.

Petition for discipline, No. 61 D.B. 89, charges the respondent with engaging in a pattern of conduct that is prejudicial to the administration of justice and adversely reflects on respondent's fitness to practice law in violation of D.R. 1-102(A)(5) and D.R. 1-102(A)(6).

As is pointed out throughout this opinion, the matters reviewed during the course of the hearing do not support this conclusion. Likewise, the series of cases submitted also do not support the conclusion. The matters contained in those decisions got to the appellate courts through a variety of routes. Some were affirmed and some were reversed; also for a variety of reasons. None suggested that the conduct of the respondent merited the intervention of the Disciplinary Board nor did the authors of the opinions see fit to refer the matter for additional action. Apparently, the appellate courts, while not praising respondent for his behavior, felt that the matters had been adequately addressed and dealt with. This analysis is entirely consistent with the findings in the instant matter. Finally, the complaints accuse

respondent of being disrespectful, and engaging in insulting and degrading behavior to the court, both in letters and in pleadings. Simply put, there is not enough evidence to support this conclusion.

In constructing this opinion, I was mindful not just of the substantive evidence which was adduced during the hearing, but also of the character testimony introduced by respondent. To be sure, even respondent's character witnesses acknowledged that his zeal tended to get him into trouble and that he sometimes was abrasive, conclusions born out by my observations. Nevertheless, each of these witnesses attested to his high ethical ideals and his unfailing devotion to the causes of his clients. Their willingness to attest to his character with full knowledge of his shortcomings, is compelling evidence of his ethical conduct.

Two other matters merit comment. The first has to do with the timeliness of the filing of these charges. In light of the disposition recommended, no lengthy analysis is necessary. However, it would appear that some requirement that Disciplinary Counsel act promptly would be appropriate. For example, by letter dated August 21, 1990, setting forth, at my request, the chronological development of the various charges, Disciplinary Counsel advised that the matter involving [A] v. [Respondent], 60 D.B. 90, originated when a complaint was received on October 21, 1985. It was not submitted to the chief disciplinary counsel until June 15, 1989, almost four years later and despite being signed by a reviewing member on August 6, 1989, was not actually served upon respondent until February 6, 1990. A similar pattern appears with respect to Charge III in the same petition, [Respondent] v. [I].

That complaint was received in October of 1985, submitted for action by chief disciplinary counsel in June of 1989 and ultimately served upon respondent in February 1990. The inordinate lapse of time surrounding these matters is neither necessary nor fair.

Similarly, some closure, with respect to repeating or reusing violations, would seem appropriate. In that regard, during the course of the hearing, the parties assiduously and successfully attempted to keep the existence of "other charges" against respondent out of the case. Subsequently, respondent himself, as a part of his defense, pointed out that some of these matters had previously arisen in other disciplinary hearings. To the extent that there was overlap, it would appear that such repetition is also unfair.

## CONCLUSIONS OF LAW

The special master hereby finds that respondent has not violated the following Disciplinary Rules of the Code of Professional Responsibility and Rules of Professional Conduct:

(1)  D.R. 1-102(A)(5);

(2)  D.R. 1-102(A)(6);

(3)  D.R. 7-106(C)(6);

(4)  D.R. 1-102(A)(4);

(5)  D.R. 2-110(B)(4);

(6)  D.R. 7-101(A)(3);

(7)  D.R. 7-102(A)(3);

(8)  D.R. 7-106(C)(7);

(9)  D.R. 7-102(A)(1);

(10)  D.R. 7-102(A)(2);

(11)  D.R. 7-102(A)(5);

(12)  D.R. 2-109(A)(1);

(13)  D.R. 2-109(A)(2);

(14)  D.R. 7-106(C)(1);

(15)  D.R. 7-102(A)(7);

(16)  RPC 1.16(a)(3);

(17)  RPC 1.16(d);

(18)  RPC 3.1;

(19)  RPC 3.3(a)(1);

(20)  RPC 8.4(c);

(21)  RPC 8.4(d);

(22)  RPC 4.1(a);

(23)  RPC 3.3(a)(4);

(24)  RPC 3.4(b);

and recommends that the petitions for discipline be dismissed.

## ORDER

And now, March 5, 1992, upon consideration of the report and recommendation of special master, the Honorable [    ], filed October 11, 1991; it is hereby ordered that the charges against [respondent], docketed at Nos. 40 D.B. 89, 61 D.B. 89 and 6 D.B. 90, be dismissed.